1

2

3

4          IN THE UNITED STATES DISTRICT COURT FOR THE

             EASTERN DISTRICT OF CALIFORNIA

5

6    CMLS MANAGEMENT, INC.,              )    1:11-CV-1756  AWI SKO
     MARGARETT WILKINS, and             )
7    MICHAEL SCHULTE,                    )
                                         )    ORDER ON DEFENDANTS'
8                    Plaintiffs,         )    MOTION TO DISMISS
              v.                         )
9                                        )
     FRESNO COUNTY SUPERIOR             )
10   COURT, JUDGE DONALD FRANSON,       )
     JUDGE MARK SNAUFFER, and           )
11   private person acting outside of judicial )
     capacity,                           )
12                                       )
                     Defendants.         )
13   _____)

14

15        This case deals with various orders issued by Fresno County Superior Court judges in an

16   on-going state court matter.  The only causes of action are for declaratory relief under 42 U.S.C.

17   § 1983.[1]  Defendants move to dismiss this case under Rules 12(b)(1) and 12(b)(6) on the basis of

18   Eleventh Amendment immunity, absolute judicial immunity, the Defendants are not persons

19   under 42 U.S.C. § 1983, and lack of jurisdiction under the *Rooker-Feldman* doctrine.  The Court

20   ordered additional briefing, which has been received, on *inter alia* whether *Younger* abstention

21   applies.[2]  After considering the submissions of the parties, the Court will dismiss and close this

22   case.

23   _____

24        [1]The Complaint is somewhat ambiguous as both 42 U.S.C. § 1983 and 28 U.S.C. § 2201 are listed in the
     complaint.  As part of an order for supplemental briefing, the Court directed Plaintiffs to clarify which statute they
25   were preceding under.  Plaintiffs indicate that the Court is making them choose between the statutes, that they choose
     at this point to proceed under 42 U.S.C. § 1983, but that they wish to amend their complaint to more clearly add
26   claims under 28 U.S.C. § 2201.

27        [2]As part of the order for supplemental briefing, the Court cited two cases – *Gilbertson v. Albright* and
     *Government Emples. Ins. Co. v. Dizol*.  Plaintiffs construed the order as requiring briefing on those cases.  That was
28   not the order of the Court.  The order was to brief the potential applicability of *Younger* abstention and
     *Wilton/Brillhart*.  The Court did not order the parties to distinguish or discuss the effect of *Gilbertson* and *Dizol* on
     this case.  While the parties may certainly cite to and rely on *Gilbertson* and *Dizol*, these cases were cited to give the
     parties a "starting point" on the relevant doctrines.  They were not cited in order to limit analysis or discussion.

**FACTUAL BACKGROUND**

From the Complaint, Plaintiffs Schulte and CMLS were in litigation with Dwight Long ("Long") regarding claims of embezzlement, breach of fiduciary duty, and defamation. Margarett Wilkins is the sole owner of CMLS, but was not initially named as a party to the case (she was added, however, as a Defendant by Long in October 2008). Defendant Judge Franson was the judge presiding over the case. In July 2008, Long apparently obtained injunctive orders from Judge Franson that purported to maintain the status quo with respect to the operations of CMLS and a related entity, Bay Development Group ("Bay"). In August 2008, Long obtained a modification of the July 2008 Order. The August 2008 Order gave Long full authority to pay Bay's venders, and also stated that "CMLS and Bay will continue to operate as historically." Schulte contends that the July 2008 Order and the August 2008 Order (collectively "Injunctive Orders") are fatally ambiguous.

On September 3, 2008, Long filed a motion for contempt based on violations of the Injunctive Orders. On September 4, 2008, Judge Franson issued an Order to Show Cause ("OSC") based on the contempt motion. There was no arraignment and Schulte was not advised of his rights. Further, the OSC for contempt was never personally served on Schulte in violation of California Code of Civil Procedure ("CCP") § 1016 until after the contempt trial started.

After the OSC had been issued, Schulte discovered that Judge Franson had personally sued Schulte 10 years prior, and had alleged that Schulte was "malicious." Upon discovering this information, Schulte filed a verified statement of disqualification that alleged that Judge Franson was biased against Schulte based on the prior lawsuit.

Judge Franson did not properly object to the statement of disqualification and instead recused himself.[3] Judge Corona was then appointed to preside over the litigation.

Prior to Judge Franson's recusal, Long had filed another contempt motion for violation of the Injunctive Orders. On July 2, 2009, Judge Corona issued a second OSC, but Schulte was never personally served or arraigned.

---

[3] Judge Franson has left the Superior Court and is now a justice on the California Fifth District Court of Appeal.

1    Around June 2009, Judge Corona began the contempt hearing on the first and second

2    OSC's.  As the contempt hearing proceeded, Long filed other motions for contempt against

3    Schulte.  In an ex parte hearing without Schulte's attendance, Judge Corona issued a third OSC

4    for contempt.  Schulte was never personally served with, or arraigned on, the third OSC.

5    The next day, Long requested a fourth contempt OSC.  CMLS then filed a motion for

6    disqualification of Judge Corona.  Later, Judge Carona recused himself, but did not issue a fourth

7    contempt OSC.  The case was transferred to Defendant Judge Snauffer.

8    In June 2010, Judge Snauffer began to proceed on the first, second, and third contempt

9    OSC's, and also on Long's fourth request for contempt, even though no OSC had issued for that

10   request.  Judge Snauffer combined all of the contempt allegations into one trial.  In the trial,

11   Schulte argued *inter alia* that his rights were repeatedly violated.  Judge Snauffer refused to

12   consider arguments on the orders issued by Judge Franson, including that the orders were void as

13   being issued by a disqualified judge, ambiguity, and Long committed fraud on Judge Franson.

14   Judge Snauffer also refused to consider Schulte's arguments regarding subject matter jurisdiction

15   and refused to allow Schulte to call and/or question witnesses against him, even though those

16   witnesses had presented testimony against Schulte and had been subpoenaed.

17   On October 22, 2010, Judge Snauffer issued his ruling.  Judge Snauffer did not find

18   Schulte to be in contempt of the first, second, or fourth OSC orders.  Judge Snauffer did find

19   Schulte in contempt of all allegations in the third OSC, and also found Schulte violated a twelfth

20   contempt charge, even though there had never been any allegations made regarding a twelfth

21   charge.  The twelfth charge was simply "made up."  Judge Snauffer ordered Schulte to pay $500

22   to the Fresno County Superior Court and awarded Long $68,000 in attorney's fees.

23   Currently, the Injunctive Orders' ambiguity has led the Superior Court in a related matter

24   to attempt to infringe on Wilkins's right to her company and CMLS's right to counsel.

25   On October 20, 2011, Plaintiffs filed this lawsuit.  On March 26, 2012, per stipulation

26   and order, Plaintiffs' only claim for damages, specifically ¶ 72 of the complaint, was dropped.

27   Instead of damages, Plaintiffs pray that this Court grant them declaratory relief on nine separate

28   issues.

**LEGAL FRAMEWORK**

1.    Rule 12(b)(1) - Facial Challenge

Federal Rules of Civil Procedure 12(b)(1)allows for a motion to dismiss based on lack of subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  It is a fundamental precept that federal courts are courts of limited jurisdiction.  Vacek v. United States Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006).  Limits upon federal jurisdiction must not be disregarded or evaded. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  "It is presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Vacek, 447 F.3d at 1250.  Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Safe Air For Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Savage v. Glendale Union High School Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003); White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself.  See Wolfe, 392 F.3d at 362; see also Meyer, 373 F.3d at 1039.

2.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory.  Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party.  Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  However, the Court is not required "to accept as true allegations that are

4

1  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead

2  Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266

3  F.3d 979, 988 (9th Cir. 2001).  To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain

4  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

5  Ashcroft v. Iqbal, 556 U.S. 662, 667-78 (2009); see Bell Atl. Corp. v. Twombly, 550 U.S. 544,

6  555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

7  allows the court draw the reasonable inference that the defendant is liable for the misconduct

8  alleged." Iqbal, 556 U.S. at 678.  That is, "for a complaint to survive a motion to dismiss, the

9  non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly

10 suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572

11 F.3d 962, 969 (9th Cir. 2009); see also Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

12

13                              **DEFENDANTS' MOTION**

14       **A.      Fresno County Superior Court**

15       Plaintiffs have named the Fresno County Superior Court as a Defendant.  The Eleventh

16 Amendment bars suits against a State or its agencies for all types of relief, regardless of the

17 nature of the relief, absent unequivocal consent by the state to be sued.  Pennhurst v. Halderman,

18 465 U.S. 89, 100 (1984); Johnson v. Rancho Santiago Cmty. College Dist., 623 F.3d 1011, 1022

19 n.5 (9th Cir. 2010); Krainski v. State ex rel. Bd. of Regents, 616 F.3d 963, 967 (9th Cir. 2010).

20 The California Superior Courts are arms of the state of California.  See Simmons v. Sacramento

21 County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003); Greater L.A. Council on Deafness,

22 Inc. v. Zolin, 812 F.2d 1103, 1110 (9th Cir. 1987).  Because the Fresno County Superior Court is

23 an arm of the state of California, it is entitled to Eleventh Amendment immunity for all of the

24 declaratory claims alleged against it.  Zolin, 812 F.2d at 1110 & n.10; see Pennhurst, 465 U.S. at

25 100; Johnson, 623 F.3d at 1022 n.5; Krainski, 616 F.3d at 967.  The Fresno County Superior

26 Court will be dismissed from this lawsuit without leave to amend.  See id.

27       **B.      Judge Franson**

28       The Complaint seeks only declaratory relief.  Although Judge Franson did issue the

Injunctive Orders, he recused himself from Plaintiffs' case, appears to have had nothing to do with Plaintiffs' case after the recusal, and most importantly, is no longer a judge on the Fresno County Superior Court.  If Judge Franson is no longer a Superior Court judge, then he has no interest in, or influence on, this litigation.

Plaintiffs' opposition explains that they fear Judge Franson will somehow interfere with Plaintiffs' case in an appellate capacity.  However, that is nothing more than unfounded speculation.  If Judge Franson as a Superior Court judge already recused himself once, without even answering Plaintiffs' recusal motion, then there is no reason whatsoever to think that he would not again recuse himself as an appellate judge.  Further, there is nothing to suggest that the justices of the Fifth District Court of Appeal would tolerate or condone an attempt of any kind by Judge Franson to influence the review of a lower court case over which he once presided and had previously recused himself.  There is no basis to conclude or believe that Judge Franson will ever have anything more to do with Plaintiffs' case.

Accordingly, declaratory relief against Judge Franson is no longer available, and Plaintiffs' claims against him are moot.  Cf. Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986)(holding that declaratory relief was no longer available against a trial judge because the plaintiff's criminal case in front of that judge had concluded); Williams v. Los Angeles Cnty. Superior Ct., 2008 U.S. Dist. LEXIS 112208, *34 (C.D. Cal. Dec. 3, 2008) (dismissing claims against superior court judge in part because the defendant was no longer a superior court judge). Judge Franson will be dismissed from this case without leave to amend.  See id.

## C.      Judge Snauffer

### Defendants' Arguments

Defendants argue, *inter alia*, that the *Rooker-Feldman* doctrine applies in this case. Plaintiffs were parties to the underlying state court action, and have sued the individual judges who presided over those proceedings. This Court lacks jurisdiction to review the underlying judicial determinations, or to declare the state court orders unenforceable.

Defendants also argue that they are entitled to Eleventh Amendment immunity.  The superior court judges are state officials and treated as arms of the state who are entitled to

immunity.  The only claims in this case involve conduct that can only be performed by a judge acting in an official judicial capacity.  Thus, all claims should be dismissed on the basis of Eleventh Amendment immunity.

Defendants also argue that Courts have consistently held that States and their agencies or officers are not persons within the meaning of 42 U.S.C. § 1983.  Here, because the Superior Court and the judges are agents of California, they are not persons under § 1983.

Defendants also argue that the judges are entitled to absolute judicial immunity.  Judicial immunity applies when the conduct at issue is judicial in nature and is performed in the clear absence of all jurisdiction.  Here, the orders at issue are judicial acts.  Further, the acts as alleged amount to an abuse of the power to issue orders.  They do not reflect the absence of all jurisdiction.  Thus, the judges are entitled to judicial immunity.

Defendants also argue that, assuming on-going state proceedings, *Younger* abstention is appropriate.  The state has a vital interest in protecting the integrity of its judicial system so that its orders and judgment are not rendered void.  Further, Plaintiffs are not barred from raising their claims in state court.  If they believe that Jude Snauffer or Franson erred, they can file an appeal or a writ petition in the state system.  Finally, granting Plaintiffs the requested declaratory relief would void a court order and dictate the future course of the state proceeding.

*Plaintiffs' Opposition*

Plaintiffs argue, *inter alia*, that the *Rooker-Feldman* doctrine does not apply because only one of the nine requests for declaratory relief seeks relief from the contempt order.  Defendants do not discuss the remaining eight requests.  As to the one request that is challenged by Defendants, the parties in the state court action and the federal action are not the same.  Further, the remaining eight requests do not involve final orders, but instead are part of an on-going case. *Rooker-Feldman* does not apply if the state court proceedings have not ended.

Plaintiffs argue that the Eleventh Amendment does not apply because the Complaint no longer contains any claims for money damages.  Eleventh Amendment immunity does not apply if the federal case seeks only declaratory or injunctive relief and is aimed at state officers acting in their official capacities.

1    Plaintiffs also argue that the Defendants are "persons" for purposes of 42 U.S.C. § 1983.

2  As long as no money damages are sought, a state official is a person under 42 U.S.C. § 1983.

3    Plaintiffs also argue that *Younger* abstention is inappropriate.  While this case is still

4  pending in state court, the state interest involved here is not similar to *Gilbertson v. Albright*, 381

5  F.3d 98 (9th Cir. 2004) because the constitutionality of a state law is not implicated.  Further,

6  there are a number of bars to litigating the federal claims in state court – there is no appeal right

7  on a contempt ruling, judicial bias acts as a bar, the superior court continues to unconstitutionally

8  apply the Injunctive Orders, Judge Franson now sits in charge of appeals and/or writs on this

9  case, and there are other procedural issues that prevent the issues from being presented in the

10  superior court.[4]

11    *Declaratory Relief Requested*

12    Plaintiffs pray for the Court to issue the following declarations:  (1) Judge Franson's

13  Injunctive Orders are void because he was disqualified for cause; (2) the Injunctive Orders are

14  unenforceable against Margarett Wilkins since she was not a party when the Injunctive Orders

15  were issued; (3) the Injunctive Orders are unenforceable against Wilkins and/or CMLS because

16  the orders are ambiguous; (4) Wilkins, as the sole owner of CMLS, has the right to choose

17  counsel for CMLS; (5) CMLS has been shut down by the actions of Wilkins because Wilkins's

18  actions were done prior to the Injunctive Orders; (6) the Injunctive Orders are unenforceable

19  against Schulte because they are ambiguous; (7) the Snauffer award of attorney's fees on the

20  contempt ruling is a violation of Schulte's liberty and property interests; (8) the Snauffer

21  contempt ruling is invalid due to multiple violations of Schulte's constitutional rights; and (9) the

22  Snauffer contempt ruling on the twelfth charge is invalid because that charge was not the basis of

23  an allegation, a hearing, or an OSC.  Plaintiffs contend that these declarations are necessary to

24  protect their constitutional rights to due process, and that to allow continued enforcement of the

25  various orders and rulings would result in constitutional violations.  See Complaint ¶¶ 62-71.

26

27    [4]Plaintiffs state that the Court "took it upon itself" to raise issues such as *Younger* abstention *sua sponte*.
To the extent that Plaintiffs are suggesting that the additional briefing was improper, *Younger* abstention may be

28  raised by the Court *sua sponte*, and may be raised at any time in the appellate process.  See H.C. v. Koppel, 203 F.3d
610, 613 (9th Cir. 2000); Barichello v. McDonald, 98 F.3d 948, 955-56 (7th Cir. 1996).

1    *Legal Standard*

2        1.        *Younger* Abstention

3        "Under *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny, a federal court should

4    abstain from hearing a case that would interfere with ongoing state proceedings." Equity

5    Lifestyle Props., Inc. v. County of San Luis Obispo, 548 F.3d 1184, 1196 (9th Cir. 2008).

6    Although *Younger* dealt with a criminal prosecution, the Supreme Court has extended its

7    abstention principles to civil actions. Middlesex County Ethics Comm. v. Garden State Bar

8    Ass'n, 457 U.S. 423, 432 (1982); Portero Hills Landfill, Inc. v. County of Solano, 657 F.3d 876,

9    882 (9th Cir. 2011). *Younger* abstention principles apply to actions at law as well as to actions

10   for injunctive or declaratory relief. Equity Lifestyle, 548 F.3d at 1196 n.23; Gilbertson v.

11   Albright, 381 F.3d 965, 968 (9th Cir. 2004). When *Younger* abstention applies, claims that seek

12   damages should be stayed, but claims that seek injunctive or declaratory relief must be dismissed.

13   See Attorney General of Guam v. Torres, 419 F.3d 1017, 1022 & n.10 (9th Cir. 2005);

14   Gilbertson, 381 F.3d at 968. A court is to abstain under *Younger* if four criteria are met: (1) there

15   is an ongoing state proceeding; (2) the state proceeding implicates "important state interests"; (3)

16   the state proceeding provides an adequate opportunity to raise federal questions; and (4) the

17   federal court action would enjoin the proceeding, or have the practical effect of doing so. Portero

18   Hills, 657 F.3d at 882; Gilbertson, 381 F.3d at 978; see also Middlesex, 457 U.S. at 432. "The

19   goal of *Younger* abstention is to avoid federal court interference with uniquely state interests

20   such as the preservation of these states' peculiar statutes, schemes, and procedures."

21   Amerisource Bergen Corp. v. Roden, 495 F.3d 1143, 1150 (9th Cir. 2007).

22       2.        Appellate Review

23       "Federal district courts, as courts of original jurisdiction, may not serve as appellate

24   tribunals to review errors allegedly committed by state courts." MacKay v. Pfeil, 827 F.2d 540,

25   543 (9th Cir. 1987). If a federal suit "is merely tantamount to the common-law practice of

26   moving to set aside a judgment for irregularity, or to a writ of error, or to a bill of review or an

27   appeal [of state court errors]," then the federal proceeding is supplementary to the state court

28   proceeding and is not one over which original jurisdiction exists. Barrow v. Hunton, 99 U.S. 80,

9

83 (1878); MacKay, 827 F.2d at 543.  Supplementary proceedings involve "mere revision of errors and irregularities, or of the legality and correctness of the judgments and decrees of the State courts . . . ."  Barrow, 99 U.S. at 83.  "Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are in essence being called upon to review the state court decision."  Doe & Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2000).

The *Rooker-Feldman* doctrine bars suits "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indust. Corp., 544 U.S. 280, 284 (2005).  "In simple terms, under *Rooker-Feldman*, a federal district court is without subject matter to jurisdiction to hear an appeal from the judgment of a state court."  Doe v. Mann, 415 F.3d 1038, 1041 (9th Cir. 2005).  The Ninth Circuit has explained:

> *Rooker-Feldman* is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state court judgments: if claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state law or procedural rules, then the federal complaint must be dismiss for lack of subject matter jurisdiction.

Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003).  However, *Rooker-Feldman* is a narrow doctrine and "is inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state court proceeding."  Lance v. Dennis, 546 U.S. 459, 464 (2006).

*Discussion*

1.    Judicial Immunity

Judge Snauffer's arguments that he is entitled to various immunities are not persuasive. Since Plaintiffs are seeking prospective declaratory relief, neither judicial immunity nor Eleventh Amendment immunity apply.  See EEOC v. Peabody Western Coal Co., 610 F.3d 1070, 1085 (9th Cir. 2010) (discussing Eleventh Amendment); Lawrence v. Kuenhold, 271 Fed. Appx. 763, 766 (10th Cir. 2008) (discussing 42 U.S.C. § 1983 and judicial immunity); Moore v. Brewster, 96 F.3d 1240, 1243-1244 (9th Cir. 1996) (same).  Dismissal on these grounds is inappropriate.

2.      *Younger* Abstention

It appears to the Court that the requirements for *Younger* abstention have been met.

First, there is an on-going state proceeding.  Plaintiffs essentially concede that this element is met.  See Doc. No. 22 at 4:17-21.  The Complaint and Plaintiffs' opposition show that the state court proceeding was filed prior to the filing of this federal case, the state court proceeding is still pending, and Judge Snauffer is presiding over that case.  Thus, the first element of *Younger* abstention is met.  See Columbia Basin Apt. Ass'n v. City of Pasco, 268 F.3d 791, 801 (9th Cir. 2001).

Second, important state interests are implicated.  States have significant interests in enforcing court orders and judgments, as well as in preserving their judicial schemes.  See Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 13-14 (1987); Juidice v. Vail, 430 U.S. 327, 335 (1977); Marciano v. White, 431 Fed. Appx. 611, 613-14 (9th Cir. 2011); Roden, 495 F.3d at 1150.  "[I]f federal courts must abstain from reviewing the method by which a state seeks to enforce its orders . . . then the federal courts must also generally abstain from reviewing the state court orders themselves, where the state provides an adequate forum for appellate review of all claims of a federal nature."  Port Authority Police Benevolent Ass'n v. Port Authority of New York & New Jersey Police Dep't, 973 F.2d 169, 174 (3d Cir. 1992) (discussing in part *Juidice* and *Pennzoil*).  Here, each of the requests for declaratory relief focus on either enforcement and validity of the Injunctive Orders issued by Judge Franson in 2008 or the contempt order issued by Judge Snauffer in 2010.  Essentially, Plaintiffs are attempting to obtain declaratory decrees that the Injunctive Orders and the contempt order are unenforceable with respect to the Plaintiffs themselves.  Such decrees would require examination of the state court's orders, and would severely impact and interfere with the state court's ability to enforce its own orders and to continue to adjudicate the case.  Additionally, at least with respect to the requests that deal with the Injunctive Orders, the Plaintiff would be bypassing the appellate procedures established by California.  For injunctive orders, including preliminary injunctions, California has made provision for interlocutory appeals.  Pursuant to CCP § 904.1(a)(6), a litigant may appeal to the pertinent Court of Appeal either the granting of an injunction or the refusal to dissolve an

1    injunction.  County of Butte v. Superior Court, 176 Cal.App.3d 693, 697 (1985); see also Art

2    Movers, Inc. v. Ni West, Inc., 3 Cal.App.4th 640, 645-46 (1992).  California also permits reviews

3    of injunctive orders through a writ of mandate.  See Smith v. Superior Court, 31 Cal.App.4th

4    205, 210-11 (1994); County of Butte, 176 Cal.App.3d at 697.  Plaintiffs' lawsuit in this Court

5    strikes against the entire appellate scheme established by California for the review of injunctive

6    orders.  See Port Authority, 973 F.2d at 176 (applying Younger abstention and refusing to review

7    a state court preliminary injunction "because by doing so we would infringe on the legitimate

8    authority of the state courts to resolve disputes which come before them, and we would be

9    interfering with the state's important interest in enforcing its courts' judgments and orders.").

10   Accordingly, the second element of Younger abstention is met.  See Pennzoil, 481 U.S. at 13-14;

11   Juidice, 430 U.S. at 335; Marciano, 431 Fed. Appx. at 613-14;[5] Roden, 495 F.3d at 1150; Port

12   Authority, 973 F.2d at 174-76; see also Hayse v. Wethington, 110 F.3d 18, 20 (6th Cir. 1997) ("It

13   seems elementary that Younger abstention applies to federal claims which seek to review

14   compliance with pending state court injunctive orders over which the state has retained

15   jurisdiction.").

16        Third, the state proceedings provide an adequate opportunity to raise the Plaintiffs'

17   federal constitutional concerns.  This Younger element requires "the absence of 'procedural bars'

18   to raising a federal claim in the state proceedings."  Meredith v. Oregon, 321 F.3d 807, 818 (9th

19   Cir. 2003); Hirsh v. Justices of the Supreme Court, 67 F.3d 708, 713 (9th Cir. 1995).  Federal

20   courts are to "assume that state procedures afford an adequate remedy, in the absence of

21   unambiguous authority to the contrary."  Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 619

22   (9th Cir. 2003); Meredith, 32 F.3d at 818.  The federal plaintiff has the burden of showing that

23   "state procedural law barred presentation of [his] claims."  Pennzoil, 481 U.S. at 14; Baffert, 332

24   F.3d at 619.  A federal plaintiff's failure to utilize the state procedures does not mean that the

26        [5]The Court notes that this case is similar to Marciano.  The state court proceeding in that case involved
27   private litigation between Marciano and his former employees, and, in the federal suit, Marciano sued the state court
     judge directly over rulings and conduct that occurred in the state proceeding.  See Marciano, 431 Fed. Appx. at 612.
28   The Ninth Circuit held, inter alia, that Younger abstention applied because Marciano was effectively challenging the
     ability of the state court judge to issue sanctions for failing to comply with discovery orders, and thus, important state
     interests were involved.  See id. at 613-14.

1  state procedures are inadequate for purposes of *Younger* abstention.  Juidice, 430 U.S. at 337;

2  World Famous Drinking Emporium, Inc. v. City of Tempe, 820 F.2d 1079, 1083 (9th Cir. 1987).

3          With respect to the Injunctive Orders, it appears that each of the arguments made against

4  those orders in this Court were also raised before Judge Snauffer.  Although the arguments were

5  rejected or not considered by Judge Snauffer, Plaintiffs have not shown that they were

6  procedurally barred from making their arguments.  More importantly, as indicated above,

7  California law permits direct appeals of orders that grant injunctions and orders that decline to

8  dissolve injunctions, and also permits review of injunctions through a writ of mandate.  See Cal.

9  Code Civ. Pro. §§ 904.1(a)(6), 1086; Smith, 31 Cal.App.4th at 210-11; Art Movers, 3

10 Cal.App.4th at 645-46; County of Butte, 176 Cal.App.3d at 697.  In light of cases such as *Smith*,

11 *County of Butte*, and *Art Movers*, as well as CCP § 904.1(a)(6) and CCP § 1086, the Court is

12 aware of no reason why Plaintiffs cannot raise their constitutional arguments against the

13 Injunctive Orders to the state appellate courts.

14         Plaintiffs' briefing indicates that there are barriers to litigating their constitutional claims

15 against the Injunctive Orders.  Specifically, Plaintiffs state that "the judicial bias is such that it

16 acts as a bar, that the Superior Court continues to unconstitutionally apply a ruling issued by a

17 disqualified judge, the disqualified judge now sits in charge of appeals and/or writs on this case,

18 and other procedural issues which cannot be addressed . . . in the superior court."  Doc. No. 22 at

19 5:6-11.  These arguments are not convincing.

20         First, as discussed above, Judge Franson no longer sits on the Superior Court and thus,

21 cannot act on the case while it is pending in that court.  Also as explained above, nothing

22 indicates that Judge Franson would refuse to recuse himself at the appellate level since he already

23 recused himself at the trial level.  Nor is there anything that remotely suggests that the Fifth

24 District Court of Appeal would permit Judge Franson to have any influence over the appellate

25 proceedings.  Second, that the Superior Court continues to apply the Injunctive Orders does not

26 speak to Plaintiffs' ability file an appeal under CCP § 904.1(a)(6) or file a writ of mandamus

27 under CCP § 1086, both of which would be heard by the Fifth District Court of Appeal and not

28 the Superior Court.  Further, as previously stated, the Complaint indicates that Plaintiffs'

contentions against the Injunctive Orders were already raised in the Superior Court, but without success.  There is nothing to indicate that Plaintiffs cannot file motions to reconsider or to dissolve or modify the Injunctive Orders.  Third, Plaintiffs do not identify the "other procedural issues" that prevent presentation of the constitutional claims in the Superior Court.  Without identification of controlling statutory or judicial authority, Plaintiffs cannot overcome the assumption of adequate state procedures.  Also, that Plaintiffs believe that they cannot raise their constitutional arguments in the Superior Court does not speak to their ability to raise those arguments in the Fifth District Court of Appeal through either an interlocutory appeal under CCP § 904.1(a)(6) or a writ of mandate under CCP § 1086.  Accordingly, Plaintiffs have not met their burden of showing that they are procedurally barred from raising their constitutional arguments against the Injunctive Orders.  See Pennzoil, 481 U.S. at 14-15; Baffert, 332 F.3d at 619.

As for the contempt order, Plaintiffs make the identical arguments as those regarding the Injunctive Orders, except that Plaintiffs state that there is no appeal available for contempt orders.  For the reasons discussed above, arguments relating to the bias of Judge Franson and the unspecified procedural bars are not persuasive.  As for the inability to file an appeal of the contempt orders, it appears that Schulte is relying on CCP § 1222 and CCP § 904.1(a)(1).  Section 1222 reads: "The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive."  Cal. Code. Civ. Pro. § 1222.  Section 904.1(a)(1) reads: "An appeal . . . is to the court of appeal.  An appeal . . . may be taken from any of the following: (1) From a judgment, except . . . a judgment of contempt that is made final and conclusive by Section 1222."  Cal. Code Civ. Pro. § 904.1(a)(1).  Thus, pursuant to statute, a "contemner possesses no right of appeal."  People v. Gonzalez, 12 Cal.4th 804, 816 (1996); Davidson v. Superior Court, 70 Cal.App.4th 514, 522 (1999).  Nevertheless, that there is no direct appeal available does not end the inquiry.

Under California law, review of a "contempt judgment is by extraordinary writ."  Gonzalez, 12 Cal.4th at 816.  That is, a contempt order may be reviewed "by writs of certiorari, habeas corpus or prohibition."  Heller v. Heller, 230 Cal.App.2d 679, 681-82 (1964); see also Koehler v. Superior Court, 181 Cal.App.4th 1153, 1165 (2010); Davidson, 70 Cal.App.4th

14

1   at 522.  In reviewing a contempt order, "there is no presumption of regularity in contempt

2   proceedings, nothing can be implied in support of an adjudication of contempt, and the record

3   must be strictly construed in favor of [the contemnor]." Koehler, 181 Cal.App.4th at 1166-67.

4   Further, the validity of the underlying order which forms the basis of contempt, see Gonzalez, 12

5   Cal.4th at 816, whether the required procedures were properly followed, see Koehler, 181

6   Cal.App.4th at 1167-72, whether the acts complained of actually constituted contempt, see Chula

7   v. Superior Court of Orange County, 57 Cal.2d 199, 204-05 (1962), and, in the case of an

8   injunction, whether the acts constituting contempt were clearly and specifically prohibited by the

9   terms of the injunction or whether the terms of the injunction were improperly uncertain or

10  ambiguous, see Brunton v. Superior Court of Los Angeles County, 20 Cal.2d 202, 205 (1942),

11  are all issues that may be reviewed through a writ.  "[W]hen writ review is the exclusive means

12  of appellate review of a final order or judgment, an appellate court may not deny an apparently

13  meritorious writ petition, timely presented in a formally and procedurally sufficient manner,

14  merely because, for example, the petition presents no important issue of law or because the court

15  considers the case less worthy of its attention than other matters." Powers v. City of Richmond,

16  10 Cal. 4th 85, 114 (1995).

17        Here, Plaintiffs have not addressed their ability to challenge the contempt orders through

18  an extraordinary writ.  In the context of an administrative proceeding, the Ninth Circuit has found

19  that use of California's writ of mandate directed to a state court provides an adequate opportunity

20  to litigate federal claims.  See Baffert, 332 F.3d at 619-20.  The on-going state proceeding in this

21  case is a judicial proceeding in a Superior Court, it is not an administrative proceeding.

22  Nevertheless, Plaintiffs' challenges to the contempt order involve the propriety of enforcing an

23  ambiguous injunction, an injunction that is void due to bias, and the violation of required and

24  fundamental procedures during the contempt process.  Plaintiffs argue that enforcement of

25  contempt orders that suffer from such flaws violate the Constitution.  In light of cases like

26  Gonzalez, Chula, Brunton, and Koehler, it is not at all clear that Plaintiffs are procedurally barred

27  from making their arguments to California appellate courts through the writ process.  Cf. Baffert,

28  332 F.3d at 619-20.   Therefore, Plaintiffs have not met their burden of showing that they are

15

procedurally barred from making their arguments against the contempt orders.  See Pennzoil, 481 U.S. at 14-15; Baffert, 332 F.3d at 619.

Finally, the declarations requested in this case would have the practical effect of enjoining the state court proceedings.  The requested declarations would void the Injunctive Orders and the contempt order, and the Superior Court would be required to reconsider its orders, reevaluate issues that had been previously decided, and conform its conduct to the declarations.  See Samuels v. Mackell, 401 U.S. 66, 72 (1971).  The course of the proceedings would certainly be altered.  Further, given the changes that would necessitate from the declarations, the Court would be placed in the position of having to continually monitor the state proceeding and to enforce its declarations as needed.  See id.  Therefore, the declarations sought would constitute direct interference with the state court proceeding, and would have the practical effect of enjoining that proceeding.  See id.; Roden, 495 F.3d at 1149 & n.9

In sum, the elements of *Younger* abstention are met in this case.  Plaintiffs are only seeking declaratory relief.  Because monetary relief is not sought, the Court is required to dismiss this case.  See Torres, 419 F.3d at 1022.

### 2.    *Rooker-Feldman*

As an alternative holding, it appears that the *Rooker-Feldman* doctrine applies to at least the contempt order.  Plaintiff Schulte lost in the Superior Court when he was found in contempt, fined, and ordered to pay attorney's fees.  Through this lawsuit, Schulte is directly challenging the propriety and correctness of the contempt order and award of fees.  Finally, as quoted above, CCP § 1222 reads:  "The judgment and orders of the court or judge, made in cases of contempt, are final and conclusive."  Pursuant to this statute, it would appear that the contempt orders are final.  Cf. Marciano, 431 Fed. Appx. at 613; Mothershed v. Justices of the Supreme Court, 410 F.3d 602, 607 n.3 (9th Cir. 2005) (amended opinion).  Therefore, Schulte is attempting to conduct a *de facto* appeal of the contempt order (including attorneys fees).  The *Rooker-Feldman* doctrine deprives this Court of jurisdiction to hear such claims.  See Marciano, 431 Fed. Appx. at 613; Doe, 415 F.3d at 1041; Bianchi, 334 F.3d at 898; MacKay, 827 F.2d at 543.

With respect to the Injunctive Orders, they appear to be non-final, interlocutory orders.  In

1  2001, the Ninth Circuit held that *Rooker-Feldman* applies to interlocutory orders.  See Doe &

2  Assocs. Law Offices v. Napolitano, 252 F.3d 1026, 1030 (9th Cir. 2001) (approving of

3  Richardson v. D.C. Ct. of App., 83 F.3d 1513, 1515 (D.C. Cir. 1996)).  In 2005, relying on *Exxon*

4  *Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280 (2005), the Ninth Circuit stated that

5  *Rooker-Feldman* only applies after state court proceedings have ended, i.e. "when the state courts

6  finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum . . . ."

7  Mothershed, 410 F.3d at 607 n.3 (amended opinion).  After 2005, however, the Ninth Circuit in

8  several unpublished cases cited *Doe & Assocs.* for the proposition that *Rooker-Feldman* applied

9  to interlocutory orders.  See, e.g., Hanson v. Firmat, 272 Fed. Appx. 571, 572 (9th Cir. 2008);

10  Melek v. Kayashima, 262 Fed. Appx. 784, 785 (9th Cir. 2007); Bugoni v. Thomas, 259 Fed.

11  Appx. 11, 11-12 (9th Cir. 2007); see also Ismail v. County of Orange, 2012 U.S. Dist. LEXIS

12  65793, *25-*26 (C.D. Cal. Mar. 21, 2012); cf. Marciano, 431 Fed. Appx. at 613 (discussing only

13  *Mothshed*).

14        The Court is not convinced that the parties have adequately addressed *Rooker-Feldman*.

15  The parties have not discussed or even cited *Mothershed* or *Doe & Assocs.*  Nevertheless, it is

16  unnecessary to resolve *Rooker-Feldman*'s application or non-application to Plaintiffs' declaratory

17  requests concerning the Injunctive Orders.  Because the Court has found that *Younger* abstention

18  applies, the Court will simply note that application of *Rooker-Feldman* to the Injunctive Orders

19  claims is not necessarily as straightforward as the parties have implied.

20

21                              **CONCLUSION**

22        Plaintiffs seek declaratory relief against two state court judges and the Fresno County

23  Superior Court.  Dismissal of all claims against the Fresno County Superior Court is appropriate

24  because, as an arm of the state, that court is entitled to Eleventh Amendment immunity.

25  Dismissal of all claims against Judge Franson is appropriate because Judge Franson already

26  recused himself once and is no longer a judge on the Superior Court.  Finally, dismissal of all

27  claims against Judge Snauffer is appropriate because *Younger* abstention applies.  Alternatively,

28  with respect to the contempt order, *Rooker-Feldman* deprives this Court of jurisdiction to review

Plaintiffs' claims. Due to the application of the Eleventh Amendment, mootness, *Younger* abstention, and *Rooker-Feldman*, amendment cannot save the complaint. Dismissal of Plaintiffs' complaint will be without leave to amend.[6]


Accordingly, for the reasons discussed above, IT IS HEREBY ORDERED that:

1.     Defendants' motion to dismiss is GRANTED without leave to amend; and

2.     The Clerk shall CLOSE this case.


IT IS SO ORDERED.

Dated:     July 17, 2012

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[6]The allegations in the Complaint are very troubling. However, the Court is required to dismiss claims for declaratory relief when *Younger* abstention applies. <u>See</u> <u>Torres,</u> 419 F.3d at 1022. Plaintiffs' remedies for what is occurring, or that has occurred, in the Superior Court are through either an appeal or a writ of mandate or writ of prohibition to the Fifth District Court of Appeal, as discussed above.